1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RICHARD PEACOCK,                    No.  2:13-cv-2506 TLN AC P

12              Plaintiff,

13        v.                             FINDINGS & RECOMMENDATIONS

14   HOROWITZ,

15              Defendant.

16

17        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42

18   U.S.C. § 1983.  Currently before the court is defendant's motion for summary judgment (ECF

19   No. 37), which plaintiff opposes (ECF No. 39).

20   I.      Plaintiff's Allegations

21        Plaintiff alleges that he suffers from degenerative spinal issues that cause him to suffer

22   "sever[e], debilitating pain, [r]equring daily treatment with pain medication, [p]hysical therapy,

23   and surg[e]ry."  ECF. No. 1 at 6, ¶¶ 6-7.  He maintains that after his transfer to Mule Creek State

24   Prison (MCSP) in January 2013, defendant Horowitz ignored his complaints of pain and refused

25   to provide him with adequate treatment.  Id., ¶¶ 7-8.  Specifically, he alleges that, without any

26   apparent medical basis, defendant refused to continue prescribing morphine, which had been

27   effective at treating his pain, and would prescribe only methadone, which provided no relief.  Id.,

28   ¶¶ 8-9.

                                         1

1       II.     Motion for Summary Judgment

2               A.      Defendant's Arguments

3       Defendant moves for summary judgment on the ground that she was not deliberately

4  indifferent to plaintiff's serious medical needs because her decision to prescribe methadone

5  instead of morphine was based upon her professional opinion that methadone was a more

6  appropriate medication for plaintiff.  ECF No. 37-1 at 7-8.  Alternatively, she argues that she is

7  entitled to qualified immunity.  Id. at 8-9.

8               B.      Plaintiff's Response

9       At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil

10  Procedure 56(c)(1)(A), which requires that "a party asserting that a fact . . . is genuinely disputed

11  must support the assertion by . . . citing to particular parts of materials in the record . . . ."

12  Plaintiff has also failed to file a separate document disputing defendants' statement of undisputed

13  facts, as required by Local Rule 260(b).

14      However, it is well-established that the pleadings of pro se litigants are held to "less

15  stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519,

16  520 (1972) (per curiam).  Nevertheless, "[p]ro se litigants must follow the same rules of

17  procedure that govern other litigants."  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987),

18  overruled on other grounds, Lacey v. Maricopa Cnty., 693 F.3d 896 (9th Cir. 2012) (en banc).

19  However, the unrepresented prisoners' choice to proceed without counsel "is less than voluntary"

20  and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as

21  "limited access to legal materials" as well as "sources of proof."  Jacobsen v. Filler, 790 F.2d

22  1362, 1364-65 & n.4 (9th Cir. 1986).  Inmate litigants, therefore, should not be held to a standard

23  of "strict literalness" with respect to the requirements of the summary judgment rule.  Id.

24      The court is mindful of the Ninth Circuit's more overarching caution in this context, as

25  noted above, that district courts are to "construe liberally motion papers and pleadings filed by

26  pro se inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder,

27  611 F.3d 1144, 1150 (9th Cir. 2010).  Accordingly, the court considers the record before it in its

28  entirety despite plaintiff's failure to be in strict compliance with the applicable rules.  However,

2

1  only those assertions in the opposition which have evidentiary support in the record will be
2  considered.

3  　　　In his opposition, plaintiff reiterates that his prescription was changed for non-medical
4  reasons at the direction of prison administration and argues that defendant's facts are disputed.
5  ECF No. 39 at 1-2.

6  　　　III.　　Legal Standards for Summary Judgment

7  　　　Summary judgment is appropriate when the moving party "shows that there is no genuine
8  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.
9  Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden
10  of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627
11  F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The
12  moving party may accomplish this by "citing to particular parts of materials in the record,
13  including depositions, documents, electronically stored information, affidavits or declarations,
14  stipulations (including those made for purposes of the motion only), admission, interrogatory
15  answers, or other materials" or by showing that such materials "do not establish the absence or
16  presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to
17  support the fact." Fed. R. Civ. P. 56(c)(1).

18  　　　"Where the non-moving party bears the burden of proof at trial, the moving party need
19  only prove that there is an absence of evidence to support the non-moving party's case." Oracle
20  Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).
21  Indeed, summary judgment should be entered, "after adequate time for discovery and upon
22  motion, against a party who fails to make a showing sufficient to establish the existence of an
23  element essential to that party's case, and on which that party will bear the burden of proof at
24  trial." Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element
25  of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.  In such
26  a circumstance, summary judgment should "be granted so long as whatever is before the district
27  court demonstrates that the standard for the entry of summary judgment, as set forth in Rule
28  56(c), is satisfied." Id.

1     If the moving party meets its initial responsibility, the burden then shifts to the opposing

2  party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

3  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the

4  existence of this factual dispute, the opposing party may not rely upon the allegations or denials

5  of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

6  admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

7  Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a

8  fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty

9  Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,

10  809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a

11  reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

12     In the endeavor to establish the existence of a factual dispute, the opposing party need not

13  establish a material issue of fact conclusively in its favor.  It is sufficient that "'the claimed

14  factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

15  truth at trial.'"  T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. V. Cities

16  Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the "purpose of summary judgment is to pierce the

17  pleadings and to assess the proof in order to see whether there is a genuine need for trial."

18  Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

19     "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

20  court] draw[s] all inferences supported by the evidence in favor of the non-moving party."  Walls

21  v. Central Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is

22  the opposing party's obligation to produce a factual predicate from which the inference may be

23  drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

24  demonstrate a genuine issue, the opposing party "must do more than simply show that there is

25  some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations

26  omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

27  non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391

28  U.S. at 289).

4

1    On November 30, 2015, defendant served plaintiff with notice of the requirements for

2    opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  ECF No. 37-2.

3    See Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988); Rand v. Rowland, 154 F.3d 952,

4    960 (9th Cir. 1998) (en banc) (movant may provide notice).

5    IV.    Legal Standards Governing Eighth Amendment Claims

6    In order to state a §1983 claim for violation of the Eighth Amendment based on

7    inadequate medical care, plaintiff "must allege acts or omissions sufficiently harmful to evidence

8    deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).

9    To prevail, plaintiff must show both that his medical needs were objectively serious, and that

10   defendant possessed a sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 298-99

11   (1991); McKinney v. Anderson, 959 F.2d 853, 854 (9th Cir. 1992).  The requisite state of mind

12   for a medical claim is "deliberate indifference."  Hudson v. McMillian, 503 U.S. 1, 5 (1992).

13   "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in

14   further significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin v.

15   Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting Estelle, 429 U.S. at 104), overruled on other

16   grounds WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).  Examples of a

17   serious medical need include "[t]he existence of an injury that a reasonable doctor or patient

18   would find important and worthy of comment or treatment; the presence of a medical condition

19   that significantly affects an individual's daily activities; or the existence of chronic and

20   substantial pain."  Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir.

21   1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989)).

22   In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court established a very

23   demanding standard for "deliberate indifference."  "While poor medical treatment will at a certain

24   point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does

25   not suffice."  Wood, 900 F.2d at 1334.  Even civil recklessness (failure to act in the face of an

26   unjustifiably high risk of harm which is so obvious that it should be known) is insufficient to

27   establish an Eighth Amendment violation.  Farmer, 511 U.S. at 837 & n.5.  It is not enough that a

28   reasonable person would have known of the risk or that a defendant should have known of the

5

1    risk.  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004).  Rather, deliberate indifference is

2    established only where the defendant *subjectively* "knows of and disregards an excessive risk to

3    inmate health and safety."  Id. (citation and internal quotation marks omitted).  Deliberate

4    indifference can be established "by showing (a) a purposeful act or failure to respond to a

5    prisoner's pain or possible medical need and (b) harm caused by the indifference.  Jett v. Penner,

6    439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted).

7             A difference of opinion between an inmate and prison medical personnel—or between

8    medical professionals—regarding appropriate medical diagnosis and treatment are not enough to

9    establish a deliberate indifference claim.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989);

10   Toguchi, 391 F.3d at 1058.  To establish a difference of opinion rises to the level of deliberate

11   indifference, plaintiff "must show that the course of treatment the doctors chose was medically

12   unacceptable under the circumstances."  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

13        V.      Undisputed Material Facts

14            Plaintiff states generally that the evidence is disputed and that his "x-rays, M.R.I.s, and

15   CT scans, and defendant[']s declaration, is dispute [sic] evidence that supports plaintiff's issues."

16   ECF No. 39 at 1-2.  It is unclear whether plaintiff is saying that the accuracy of his records and

17   defendant's declaration is in dispute, or that his records and defendant's declaration create a

18   factual dispute because they support plaintiff's position.  To the extent plaintiff is claiming the

19   accuracy of the records and defendant's declaration is in dispute, he does not identify any specific

20   medical records that he claims are inaccurate.  Id.  With respect to defendant's declaration, the

21   arguments that defendant Horowitz' actions were ordered by prison administration and that she

22   biased the other members of the Pain Management Committee are based on speculation rather

23   than admissible evidence.  Id.  If plaintiff is claiming that his medical records and defendant's

24   declaration support his claims, then the dispute is not over the historical facts reflected in those

25   documents, but over whose position those facts support.  In either event, the following facts have

26   not been disputed and are deemed admitted.[1]

27   _____

28   [1]  In determining which facts are undisputed, the court has considered plaintiff's verified
     complaint and the transcripts from his sworn deposition.

1    At all times relevant to the complaint, plaintiff was an inmate in the custody of the

2    California Department of Corrections and Rehabilitation (CDCR) and housed at MCSP.

3    Defendant's Statement of Undisputed Facts (DSUF) (ECF No. 37-3) ¶ 1; ECF No. 1 at 5, ¶ 4.  At

4    all times relevant to the complaint, defendant Horowitz was a physician employed by CDCR at

5    MCSP.  DSUF ¶ 3; ECF No. 1 at 5, ¶ 5.  She was plaintiff's primary physician from his arrival at

6    MCSP in January 2013, until approximately September 2013.  DSUF ¶ 5.

7    When plaintiff was transferred to MCSP, he had a pre-existing prescription to take one

8    fifteen milligram, extended-release morphine tablet twice a day as needed for pain.  DSUF ¶ 7;

9    ECF No. 37-5 at 14 (Plaintiff's Deposition Transcript, Vol. 1 (Pl. Depo. 1) at 19:17-23).  On

10   February 7, 2013, shortly after arriving at MCSP, plaintiff had his first appointment with

11   defendant Horowitz.  DSUF ¶ 9; ECF No. 37-5 at 18 (Pl. Depo. 1 at 25:23-25); ECF No. 37-6 at

12   9.  Plaintiff had been stabbed in the back in 2007, has a history of degenerative joint disease, and

13   during the appointment complained of chronic pain.  DSUF ¶ 9; ECF No. 1 at 6, ¶ 6; ECF No. 37-

14   6 at 9.  Defendant Horowitz conducted a physical examination of plaintiff which showed that he

15   had difficulty walking, sitting, and standing.  DSUF ¶ 10; ECF No. 37-6 at 9.  Defendant's notes

16   further indicate that plaintiff "clearly has balance problems and pain."  ECF No. 37-6 at 9.

17   Defendant Horowitz decided to continue plaintiff's morphine prescription while she gathered

18   information on his condition and scheduled him for a pain intake appointment.  DSUF ¶¶ 11-12;

19   ECF No. 37-5 at 20 (Pl. Depo. 1 at 28:4-7); ECF No. 37-6 at 9.  The purpose of the pain intake

20   appointment was "to further evaluate his need for a long-term opioid prescription for pain

21   management pursuant to California Correctional Health Care Services Pain Management

22   Guidelines."  DSUF ¶ 12.

23   Plaintiff's pain intake appointment took place on February 22, 2013, and lasted

24   approximately one hour.  DSUF ¶ 13; ECF No. 37-6 at 28.  During the appointment, defendant

25   Horowitz conducted a physical examination, obtained plaintiff's pain history, and had plaintiff

26   complete some questionnaires related to his pain and ability levels.  DSUF ¶¶ 13-14; ECF No. 37-

27   5 at 21-22 (Pl. Depo. 1 at 29:3-30:20); ECF No. 37-6 at 28-38.  Plaintiff was advised that his case

28   for opioid pain medication would be presented to the Pain Management Committee and his

1   morphine prescription was continued to allow defendant Horowitz time to evaluate the
2   information gathered during the pain intake appointment.  DSUF ¶¶ 14, 16.

3          Plaintiff had another appointment with defendant Horowitz on March 8, 2013, at which
4   time his morphine prescription was continued because defendant Horowitz had not completed her
5   evaluation of plaintiff's chronic pain complaints.  DSUF ¶¶ 17-18; ECF No. 37-6 at 42.

6          On March 29, 2013, plaintiff was seen by defendant Horowitz regarding a pulmonary
7   consultation.  DSUF ¶ 19; ECF No. 37-6 at 44.  During this appointment, plaintiff was advised
8   that his morphine prescription was being discontinued and that instead he would be prescribed
9   five milligrams of methadone twice a day.  DSUF ¶ 19; ECF No. 1 at 14; 19 at 2.  Plaintiff was
10  further advised that his case would go before the MCSP Pain Management Committee to decide
11  whether he should continue on opioid pain medication and whether methadone was appropriate
12  for his chronic pain.  DSUF ¶ 28; ECF No. 37-6 at 44.

13         On April 8, 2013, plaintiff was seen by defendant Horowitz because he had missed three
14  methadone doses.  DSUF ¶¶ 29-30; ECF No. 37-5 at 32 (Pl. Depo. 1 at 48:20-25); ECF No. 37-6
15  at 46.  Plaintiff advised that he had missed the medications because he was not allowed to leave
16  the building where he was housed in time to get his medication.  Id.  Defendant Horowitz
17  changed plaintiff's prescription to an as needed basis so that he would not be reported for missing
18  his medication if he did not show up, and to evaluate how often and how much pain medication
19  plaintiff required.  DSUF ¶ 31; ECF No. 37-6 at 6, ¶ 17.

20         Plaintiff's case was brought before the Pain Management Committee on April 26, 2013.
21  DSUF ¶ 32; ECF No. 37-6 at 48-49.  The Committee determined that continuing opioid pain
22  medication was contraindicated in plaintiff's case, and recommended discontinuing all long-term
23  opioid pain medication.  DSUF ¶ 34; ECF No. 37-6 at 48.  The Committee agreed that plaintiff's
24  methadone prescription be continued with the eventual goal of discontinuing the prescription.  Id.
25  The Committee also suggested that plaintiff be given Cymbalta on a trial basis.  ECF No. 37-6 at
26  48.  According to the Pain Management Guidelines, Cymbalta is an anti-depressant that can be
27  used to treat chronic pain.  Id. at 18.

28         On May 3, 2013, plaintiff was interviewed by defendant Horowitz about a grievance that

he had filed regarding the discontinuation of his morphine prescription.  DSUF ¶ 36; ECF No. 37-6 at 51-53.  During the interview and exam, defendant Horowitz confirmed that plaintiff was still able to complete his activities of daily life without assistance.  DSUF ¶ 37; ECF No. 37-6 at 52. Defendant Horowitz attempted to discuss Cymbalta with plaintiff, but he refused to consider the alternative medication.  ECF No. 37-6 at 7, 51.  During his deposition, plaintiff was adamant that he would not take psychotropic medication and that psychotropic medications are not meant to be used for pain management.  ECF No. 37-5 at 11-12, 19 (Pl. Depo. 1 at 15:12-16:3, 27:4-6); Pl. Depo. 2 at 50:14-25.  He also affirmed that he had made his feelings on the matter known to defendant Horowitz.  ECF No. 37-5 at 20 (Pl. Depo. 1 at 28:10-14).

Defendant saw plaintiff once again on June 28, 2013, at which time he stated that he was generally doing better and walking the track regularly.  DSUF ¶ 38; Pl. Depo. 2 at 52:19-53:10.

Morphine and methadone are both long-acting opioid analgesics, but methadone is longer lasting and safer.  DSUF ¶ 21.  Methadone is less likely to lead to severe downs between doses because it provides a more constant analgesic effect than morphine.  Id.  Five milligrams of methadone twice a day is a slightly stronger prescription than fifteen milligrams of morphine twice a day and generally in keeping with the dosing equivalence standards in the Pain Management Guidelines.  DSUF ¶ 20.

VI.    Discussion

In his opposition, plaintiff summarily argues that defendant Horowitz discontinued his morphine prescription at the direction of prison administration rather than because it was medically indicated, and that the Committee's review of his case was not fair because defendant Horowitz was a deciding member of the Committee and biased the other members against him. ECF No. 39 at 2.  However, plaintiff has not provided any evidence to support these conclusory allegations and his deposition establishes that his belief regarding defendant's motivation for removing him from morphine is based on speculation and inadmissible hearsay.  ECF No. 37-5 at 92-97 (Pl. Depo. 2 at 70:20-75:17).

Although plaintiff's allegation that his prescription was discontinued for non-medical reasons was sufficient to support his claim for deliberate indifference on screening, at summary

1    judgment he must go beyond the pleadings and designate specific facts to show a material factual

2    dispute.  Celotex Corp., 477 U.S. at 324.  He has failed to do so here.  As outlined above, the

3    undisputed facts show that defendant Horowitz did not immediately discontinue plaintiff's

4    morphine prescription upon his arrival at MCSP.  Instead, she evaluated plaintiff's condition,

5    conducted a pain intake appointment, and had plaintiff complete a series of questionnaires aimed

6    at evaluating his pain and ability levels before deciding to change his prescription from morphine

7    to methadone.  This evidence shows that defendant did not change plaintiff's prescription for

8    arbitrary, non-medical reasons, but instead specifically evaluated his complaints of chronic pain

9    before making the change.  Even if the court assumes that defendant Horowitz told plaintiff that

10   she does not prescribe anyone morphine regardless of what they were previously prescribed, as he

11   alleged in the complaint (ECF No. 1 at 6), given Horowitz' professional opinion that methadone

12   is a safer and more effective drug than morphine (DSUF ¶¶ 21-22), the statement does not

13   support a finding of deliberate indifference.  Beyond unsupported speculation, plaintiff has

14   offered no evidence to support his claim that defendant Horowitz was acting at the direction of

15   the prison administration without regard to his medical condition.

16       The facts also show that defendant referred plaintiff's case to the Committee, which did

17   not overturn her decision to change plaintiff's prescription from morphine to methadone and

18   further determined that continued treatment with any opiates was "contraindicated or not helpful"

19   and "created[d] a far greater risk than benefit for [plaintiff]."  ECF No. 37-6 at 48.  The

20   Committee determined that the ultimate goal for plaintiff should be to discontinue all opioid pain

21   medication for the treatment of his chronic pain, including methadone, and it was recommended

22   that plaintiff be prescribed Cymbalta on a trial basis.  However, plaintiff was adamant about not

23   taking any psychotropic medications due to his belief that they are not appropriate for pain relief.[2]

24       While plaintiff is certainly free to refuse specific medications or types of medication, he

25   does have a right to dictate what medications he will be prescribed.  Stiltner v. Rhay, 371 F.2d

26

27   _____

     [2] Plaintiff's aversion to methadone appears to be similarly based upon his belief that it was for
28   heroin addicts and not meant for pain management.  ECF No. 37-5 at 19 (Pl. Depo. 1 at 27:12-
     15), 96 (Pl. Depo. 2 at 74:2-3).

1    420, 421 n.3 (9th Cir. 1967) ("[P]laintiff's allegations show only that he has not been receiving

2    the kind and quality of medical treatment he believes is indicated.  Like the Seventh Circuit, 'we

3    know of no authority standing for the proposition that such a claim as plaintiff attempts to assert

4    here is cognizable under the Federal Civil Rights Act.'" (quoting United States ex rel. Lawrence

5    v. Ragen, 323 F.2d 410, 412 (7th Cir. 1963))); United States ex rel. Hyde v. McGinnis, 429 F.2d

6    864, 867-68 (2nd Cir. 1970) ("'The prisoner's right is to medical care—not the type or scope of

7    medical care which he personally desires.'" (quoting Coppinger v. Townsend, 398 F.2d 392, 394

8    (10th Cir. 1968))).  Though the complaint alleges that his prescription was changed "against the

9    reccomondations [sic] of pain specialists and neurosurgeons prior orders" (ECF No. 1 at 5),

10   plaintiff has not offered any evidence to support this contention or otherwise demonstrate that

11   defendant Horowitz' actions were medically unacceptable.  Plaintiff does submit a copy of a

12   doctor's report from September 2008; however, this report states only that the doctor

13   recommends pain management that includes "using appropriate narcotic pain medications and

14   anti-inflammatories."  ECF No. 39 at 28.  The report does not specify the medication or dosage

15   plaintiff should be prescribed.

16          Finally, plaintiff has not provided any evidence that would contradict defendant Horowitz'

17   professional opinion that methadone is a safer, longer-lasting alternative to morphine.  Defendant

18   Horowitz' professional opinion regarding the relative safety and efficacy of methadone, which led

19   to her changing plaintiff's prescription, shows that she was attempting to provide plaintiff with

20   what she believed was a safer and more effective treatment, not that she was deliberately

21   indifferent to his medical needs.  To the extent plaintiff has claimed that methadone did not

22   provide him any relief (ECF No. 1 at 6), he indicated during his deposition that methadone did

23   provide some relief (ECF No. 37-5 at 13 (Pl. Depo. 1 at 17:8-11); Pl. Depo. 2 at 50:2-4), though

24   not as much as morphine (ECF No. 37-5 at 30 (Pl. Depo. 1 at 41:21-24)).  However, even if

25   methadone was not as effective for plaintiff as morphine, defendant Horowitz' decision to change

26   plaintiff's prescription was not based solely on the efficacy of the medication.  She also

27   considered plaintiff's condition and the safety of the medication being prescribed.  DSUF ¶ 22.

28   Plaintiff's contention that defendant Horowitz should have only considered how effective the

1    medication was at managing his pain constitutes a difference of opinion as to how to best treat his

2    condition, and does not rise to the level of deliberate indifference absent evidence that the course

3    of treatment was medically unacceptable. Jackson, 90 F.3d at 332.

4         VII.    Conclusion

5         Plaintiff's allegations against defendant Horowitz amount to no more than a difference of

6    opinion as to how best to treat his chronic pain.  The undersigned therefore recommends that

7    defendant's motion for summary judgment be granted and judgment be entered for defendant.

8    Because the court finds there was no violation of plaintiff's Eighth Amendment rights, it declines

9    to address defendant's qualified immunity argument.

10        VIII.   Summary

11        It is recommended that defendant's motion for summary judgment be granted.  Plaintiff's

12   complaint that defendant Horowitz changed his medication is a difference of opinion about what

13   treatment he should receive and is not deliberate indifference.

14        IT IS HEREBY RECOMMENDED that defendant Horowitz' motion for summary

15   judgment (ECF No. 37) be granted for the reasons set forth above and judgment entered for

16   defendant.

17        These findings and recommendations are submitted to the United States District Judge

18   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

19   after being served with these findings and recommendations, any party may file written

20   objections with the court and serve a copy on all parties.  Such a document should be captioned

21   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

22   objections shall be served and filed within fourteen days after service of the objections.  The

23   parties are advised that failure to file objections within the specified time may waive the right to

24   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

25   DATED: July 20, 2016

26

27   ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

28

                                         12